**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **ERIC RAMÍREZ,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PUERTO RICO AQUEDUCT AND SEWER AUTHORITY, et al.,**<br><br>**Defendants.** | **Civ. No. 24-1411 (ADC)** |

**OPINION AND ORDER**

## I. Introduction

Before the Court is the Puerto Rico Aqueduct and Sewer Authority's ("PRASA")[1] motion for summary judgment seeking dismissal of Eric Ramírez's ("plaintiff") complaint. **ECF No. 32**. PRASA's motion seeks the complete dismissal of the action for want of subject-matter jurisdiction—specifically, because plaintiff's damages do not exceed the $75,000 threshold required for diversity jurisdiction. *Id*.

For the reasons set forth below, the Court **DENIES** the motion.

[1] Plaintiff also sued MAPFRE PRAICO Insurance Company ("MAPFRE," and together with PRASA, "defendants"). However, on October 10, 2025, plaintiff filed a joint stipulation dismissing his claims against MAPFRE. **ECF No. 26**.

## II. Legal Standard

### A. Factual challenges to federal subject-matter jurisdiction.

The accepted means of raising a challenge to a federal court's subject-matter jurisdiction is through a motion under Fed. R. Civ. P. 12(b)(1). *See Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 362-65 (1st Cir. 2001). Said challenges, because of their nature, can be raised at any time. Fed. R. Civ. P. 12(h)(3). There are facial challenges, which attack the sufficiency of the jurisdictional allegations in a complaint, and factual challenges, which deny the facts underlying the purported existence of jurisdiction. *Valentín*, 254 F.3d at 363. While facial challenges are subject to the same standard as Fed. R. Civ. P. 12(b)(6) motions, which involves taking all well-pleaded allegations in the complaint as true, the standard for factual challenges requires an evidentiary inquiry. *Id.* What shape this inquiry takes depends on "whether the relevant facts, which would determine the court's jurisdiction, also implicate the elements of the plaintiff's cause of action." *Torres-Negrón v. J&N Records, LLC*, 504 F.3d 151, 163 (1st Cir. 2007). If not, then the Court is "free to weigh the evidence and satisfy itself as to existence of its power to hear the case." *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). But if the merits and jurisdictional questions are intertwined, then "the district court should employ the standard applicable to a motion for summary judgment." *Id.*, at 163 (quoting *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005)); *see also Guzmán v. Hamilton Rsrv. Bank*, No. CV 24-1467 (GMM), 2025 WL 2322444

(D.P.R. Aug. 12, 2025) (employing summary judgment standard to intertwined factual jurisdictional challenge).

### B. Summary Judgment under Fed. R. Civ. P. 56.

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sands v. Ridefilm Corp.,* 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party; it is "material" if it potentially affects the outcome of the case. *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016); *Calero-Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir. 2004). Although the court states the facts in the light most favorable to the party against whom summary judgment is sought, the court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted). "Where . . . a district court rules simultaneously on cross-motions for summary judgment, it must view each motion, separately, through this prism." *Est. of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010) (citing *Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996)).

The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.*, 530 U.S. 133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id.*

It is a "bedrock principle that a party opposing summary judgment must adduce specific evidence sufficient to create a genuine issue of material fact." *Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc.*, 126 F.4th 773, 777 (1st Cir. 2025). Local Rule 56(c) states, in pertinent part, that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts" in which it "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." L. Civ. R. 56(c). The opposing party may also include a "separate section [of] additional facts" which must comply with Local Rule 56(e). *Id.* Local Rule 56(e), for its part, provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . . . The court shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." L. Civ. R. 56(e). This is known as an "anti-ferret rule," which is "intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court."

*López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th 22, 26 (1st Cir. 2023). Litigants ignore the anti-ferret rule at their peril. *Rodríguez-Severino v. UTC Aerospace Sys.*, 52 F.4th 448, 458 (1st Cir. 2022). In the end, the nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006).

## III. Discussion

### A. Procedural hurdles

PRASA appears to raise a factual challenge to the Court's subject-matter jurisdiction under 28 U.S.C. § 1332(a). It contests the assertion that the amount in controversy exceeds $75,000 as is required for this Court to exercise diversity jurisdiction. In the complaint, plaintiff claimed physical and moral damages of no less than $500,000. **ECF No. 1** at ¶¶ 24-31. PRASA puts in doubt plaintiff's objective good faith in calculating these valuations.[2] **ECF No. 32** at 2, 8-11. It contends that the facts of the case establish, to a legal certainty, that plaintiff's claim does not exceed the $75,000 jurisdictional threshold.

In making its challenge, PRASA relies on some of the complaint's allegations for its statement of uncontested material facts. *See* **ECF No. 32**. But its principal support comes from evidence collected through the discovery process that is extrinsic to the complaint, such as

---

[2] "Good faith is measured objectively; the question . . . is whether to anyone familiar with the applicable law this claim could objectively have been viewed as worth' more than the jurisdictional minimum." *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 41 (1st Cir. 2012) (citation modified).

medical reports and plaintiff's deposition testimony. *Id.* On the other hand, it is notable that plaintiff qualifies and partly admits some of the proposed statements of fact. **ECF Nos. 34, 35**. PRASA does not challenge the existence of damages or the allegations of causation. The only question posed by its motion is whether plaintiff's alleged damages can be said, in good faith, to exceed $75,000. That does not require much, if any, fact-finding from the Court's part.

For this reason, and as a threshold matter, the Court finds it unnecessary to decide whether Rule 12(b)(1) or 56 should govern the fact-finding as regards defendant's motion. *Cf.* Memorandum and Order, *Castro-De Jesús v. Nieves-Olabarrieta*, No. 24-cv-1081 (PAD) (D.P.R. Apr. 16, 2026), at ECF No. 60 at 2 (analyzing self-styled "motion for summary judgment" challenging jurisdictional amount under Rule 12(b)(1) standard). In factual challenges under Fed. R. Civ. P. 12(b)(1), "the plaintiff's jurisdictional averments are entitled to no presumptive weight[,] and the court must address the merits of the jurisdictional claim by resolving the factual dispute[.]" *Valentín*, 254 F.3d at 363 (citing *García v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)). Under this standard, the Court may "order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Id.*, at 363-64 (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990); *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987)).

But even if, in theory, this standard is less favorable to plaintiff than the Rule 56 standard, where he would benefit from the drawing of reasonable inferences as the non-movant, he would

not be prejudiced in any significant way.[3] After all, once a jurisdictional amount allegation is challenged, it is axiomatic that it falls on the plaintiff to establish "with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." *Stewart v. Tupperware Corp.*, 356 F.3d 335, 338 (1st Cir. 2004) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (further citations omitted)).

### B. The arguments and proffer

Plaintiff claims that on May 27, 2024, he was walking through Plaza Arturo Somohano in Old San Juan, Puerto Rico when he stepped on a metal manhole cover that gave way, causing him to fall approximately five feet into the manhole. **ECF No. 1** at 3-4. Plaintiff was transported by ambulance to Doctors' Center Hospital for emergency care and returned the following day due to continued pain. According to the complaint, the accident resulted in multiple traumas to the body, including a fractured left shoulder. *Id.*, at 5. On June 13, 2024, he underwent shoulder surgery at Westhill Medical Center in California. The injuries required prescription pain medication and physical therapy, leaving him with a permanent scar, persistent shoulder pain, physical impairment, and limited mobility. *Id.*

---

[3] The Court has considered whether an amount-in-controversy challenge implicates "the elements of the plaintiff's cause of action" such as to require summary judgment-style fact-finding. *Torres-Negrón*, 504 F.3d at 163. Any tort claim under Puerto Rico law requires evidence of physical or emotional injury. *See Vázquez-Filippetti v. Banco Popular de Puerto Rico*, 504 F.3d 43, 49 (1st Cir. 2007). However, the disputed question here is not whether plaintiff suffered an injury but whether it is a legal certainty that her recoverable damages do not exceed $75,000. The Court sees this question as qualitatively different from a merits question.

Based on these facts, plaintiff requests compensatory damages totaling at least $500,000.00, in addition to punitive damages. *Id.*, 6-8. Specifically, plaintiff claims physical bodily damages including those related to his shoulder fracture, ongoing mobility impairment, and permanent scarring in an amount not less than $300,000.00. *Id*. He also includes a claim for emotional and moral suffering because the injuries and partial permanent disabilities have deprived him of the ability to participate in and enjoy life's activities. As a direct result, he seeks compensation for severe mental and moral suffering in an amount not less than $100,000.00. *Id*. Finally, he seeks compensation for past and future loss of income estimated in no less than $50,000.00, and $50,000.00 for out-of-pocket expenses, which include hospital bills, transportation costs, and anticipated future medical treatments. *Id.*, at 7.

PRASA seeks dismissal for want of jurisdiction. It contends that the plaintiff cannot demonstrate to a "legal certainty" that the true amount in controversy exceeds the $75,000.00 statutory threshold required for diversity jurisdiction under 28 U.S.C. § 1332. **ECF No. 32** at 2. Plaintiff's $500,000.00 in compensatory damages, PRASA argues, is a generic allegation that is not based in a good-faith estimate. *Id*. In support, PRASA highlights portions of the medical record where it shows that the X-rays taken at the emergency room after the incident revealed "no acute fracture or dislocation" of his left shoulder and elbow. *Id.*, at 5-6. It also points out that, rather than seeking follow-up emergency treatment, plaintiff completed his vacation, had dinner with his family, drove around Puerto Rico, and did not seek further medical evaluation

until June 7, 2024 after returning to his home in California. *Id.*, at 5. Furthermore, PRASA proffered evidence showing that plaintiff had a pre-existing left shoulder condition dating back to October 2023 for which he had already been receiving physical therapy and for which he underwent shoulder surgery on June 13, 2024. *Id.*, at 13. Moreover, it proffers that, according to an independent medical examination by Dr. Omar Gómez Medina, plaintiff only has a 2% whole person impairment rating and determined that an apportionment was necessary because his symptoms were not solely caused by incident in Old San Juan. *Id.*, 5-6.

PRASA further highlights portions of plaintiff's January 14, 2026 deposition. Specifically, there plaintiff acknowledged that he was not in severe pain immediately after the fall, that his ankle healed without intervention, and that his current physical complaints are limited to his arm and back. *Id.*, at 5. Regarding his claim for emotional and psychological suffering, the plaintiff admitted that he was already seeing a therapist for depression following the tragic death of his mother eight months prior to the accident, though he noted that the fall and subsequent disability leave added stress. *Id.*, at 7.

### C. Comparable awards

The Court disagrees with PRASA. Although plaintiff seems to be under the wrong impression that burden is not his,[4] there are enough allegations and proffer of evidence to conclude that the jurisdictional amount is met in this case.

[4] *See* **ECF No. 33** at 8.

One way (but not the exclusive way) for a plaintiff to establish that the amount in controversy exceeds $75,000 is "taking notice of amounts recovered by plaintiffs in similar cases in a similar locality . . . ." *Stewart*, 356 F.3d at 339. The Court finds that, reviewing awards in comparable cases suffices to deny PRASA's request.

Contrary to PRASA's contentions, there are several cases with similar facts within the First Circuit that grant awards exceeding the jurisdiction threshold. For example, this Court recently evaluated a case where a plaintiff suffered an ankle avulsion fracture after tripping in an uncover water meter in Puerto Rico requiring treatment with a cam boot and a lace-up brace. *See Andrea Smith v. PRASA*, et al, 24-1455 (ADC) ECF No. 29, (D.P.R. September 15, 2026) (holding that the jurisdictional amount was met). It was claimed that the extended boot usage aggravated a pre-existing hip injury, necessitating 33 physical therapy sessions and prescription pain medications. A subsequent orthopedic evaluation noted a normal gait and assigned a 1% whole person permanent impairment rating. The plaintiff further claimed persistent daily challenges with walking, driving, household chores, back misalignment, and weather sensitivity. *Id.*

Moreover, in *González-Cabrera v. Simon Property Grp, L.P.*, No. 11-cv-1136 (CCC) (D.P.R. Sept. 16, 2013) the plaintiff alleged to have tripped on a pothole in the parking lot of a shopping mall and injured her ankle, suffering a right foot fifth metatarsal fracture and a right ankle sprain/avulsion fracture tip of the lateral malleolus. She sued the owner and operators of the

shopping mall for, among other things, her physical and emotional damages under Puerto Rico's general tort statute. Her expert assigned her 4% whole person impairment, while the defendants' expert assigned only 2%. The Court there denied a motion to dismiss for lack of subject-matter jurisdiction similar to the one before the Court here, premised on a challenge to the amount in controversy. *González-Cabrera*, No. 11-cv-1136 (CCC), at ECF Nos. 25, 35. At the conclusion of the trial, a jury awarded Ms. González $157,250.00 in damages. *Id.*, at ECF No. 111. That judgment was rendered on September 16, 2013. For purposes of illustrating the time-value of that amount, it would be equivalent to $224,252.96 as of July 2026 according to the U.S. Bureau of Labor Statistics.[5]

In addition, as notoriously flagged by the First Circuit in *Tupperware*, several other cases have upheld the threshold amount for damages of arguably lesser degree than the ones before this Court. For example, in *Havinga v. Crowley Towing and Transp. Co.*, 24 F.3d 1480 (1st Cir. 1994), the First Circuit upheld awards ranging from $200,000 to $450,000 in a case where "the plaintiffs did not suffer physical injury…." *Stewart v. Tupperware Corp.*, 356 F.3d at 340; *see also Mejias-Quiros v. Maxxam Prop. Corp.*, 108 F.3d 425 at 425 (1st Cir. 1997)(holding that an award of $200,000 for pain and suffering was not excessive where plaintiff produced medical testimony about continuing headaches, mild depression, low self-esteem, and post-traumatic stress).

---

[5] *See CPI Inflation Calculator*, United States Bureau of Labor Statistics, https://www.bls.gov/data/inflation_calculator.htm (last visited Oct. 9, 2026).

The Court is of the view that, if the damages in those cases were sufficient to meet the amount-in-controversy requirement, plaintiff's claimed damages should too. *Tupperware*, 356 F.3d at 340 ("These cases are not on all fours with this case, but demonstrate that it is not legally certain that a jury could not make an award of $75,000.").

## IV. Conclusion

For these reasons, the Court **DENIES** defendant's' motion at **ECF No. 32**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 9th day of November 2026.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**